#26104-a-DG

**2012 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

PEGGY A. DETMERS and
DETMERS STUDIOS, INC.,
a South Dakota Corporation,                                 Plaintiffs and Appellants,

    v.

KEVIN COSTNER and
THE DUNBAR, INC.,
a South Dakota Corporation,                                 Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RANDALL L. MACY
Judge

\* \* \* \*

ANDREW R. DAMGAARD
A. RUSSELL JANKLOW of
Janklow Law Firm, Prof. LLC
Sioux Falls, South Dakota                        Attorneys for plaintiffs
                                  and appellants.


KYLE L. WIESE
JAMES S. NELSON of
Gunderson, Palmer, Nelson & Ashmore, LLP
Rapid City, South Dakota                         Attorneys for defendants
                                  and appellees.

\* \* \* \*

ARGUED MARCH 19, 2012

OPINION FILED **05/09/12**

#26104

GILBERTSON, Chief Justice

[¶1.] In 2008, Peggy Detmers and Detmers Studios, Inc. (collectively "Detmers") brought suit against Kevin Costner and The Dunbar, Inc. (collectively "Costner"). The suit sought declaratory judgment regarding an agreement on the placement of sculptures Costner had commissioned from Detmers. After a bench trial, the court granted judgment in favor of Costner. Detmers appeals. We affirm.

**FACTS**

[¶2.] In the early 1990s, Costner envisioned building a luxury resort called "The Dunbar" on property he owned near Deadwood, South Dakota. After discussions, Costner commissioned Detmers to design 17 buffalo and Lakota warrior sculptures, intending to display them at The Dunbar's entrance. The bronze sculptures are 25% larger than life-size and depict three Lakota warriors on horseback pursuing 14 buffalo at a "buffalo jump." Detmers and Costner orally agreed that she would be paid $250,000 and would receive royalty rights in the sculptures' reproductions, which were to be marketed and sold at The Dunbar's gift shop. When The Dunbar had not been built in the late 1990s, Detmers stopped working on the sculptures.

[¶3.] After several months of negotiations, on May 5, 2000, Costner sent Detmers a letter detailing an agreement that would provide her additional compensation in exchange for completing the sculptures. Detmers agreed and signed the letter as requested, creating a binding contract. As part of the agreement, Costner paid Detmers an additional $60,000, clarified royalty rights on

reproductions, and provided her certain rights regarding display of the sculptures. Paragraph three of the agreement, which is at issue in this case, provides:

> Although I do not anticipate this will ever arise, if The Dunbar is not built within ten (10) years or the sculptures are not agreeably displayed elsewhere, I will give you 50% of the profits from the sale of the one and one-quarter life scale sculptures after I have recouped all my costs incurred in the creation of the sculptures and any such sale. The sale price will be at our above standard bronze market pricing. All accounting will be provided. In addition, I will assign back to you the copyright of the sculptures so sold (14 bison, 3 Lakota horse and riders).

[¶4.] Paragraph four of the agreement provides: "We will locate a suitable site for displaying the sculptures if The Dunbar is not under construction within three (3) years after the last sculpture has been delivered to the mold makers." Because the resort was not under construction within three years after the last sculpture had been delivered, Detmers and Costner began looking for display locations as required by paragraph four. Detmers suggested locations in Hill City, while Costner considered locations near Deadwood.

[¶5.] On January 23 or 24, 2002, Costner called Detmers and they discussed permanently placing the sculptures at a site on Costner's property where he intended to build The Dunbar.[1] The project became known as "Tatanka." Costner hired landscape architect Patrick Wyss to design Tatanka. Costner instructed Wyss to keep Detmers informed and involved in the design process. Detmers was

---

1. During her deposition, Detmers initially denied that she received this phone call. After being confronted with telephone records, Detmers agreed Costner had called her. She then denied that Costner had suggested placement of the statutes at his Deadwood property during this call. During later questioning, she admitted that during the call he talked about The Dunbar location for the statutes.

influential in the sculptures' placement at Tatanka, including suggesting and implementing wood "mock-ups" to predetermine the exact location of each sculpture. Detmers, Costner, and Wyss were all present when the sculptures were placed at Tatanka. Tatanka was funded solely by Costner and is a separate legal entity from The Dunbar. In addition to the sculptures, Tatanka consists of a visitor center, gift shop, café, interactive museum, and nature walkways. Both Detmers and Costner spoke at Tatanka's grand opening in June 2003, expressing enthusiasm and pride in the attraction.

[¶6.] In 2008, Detmers brought suit against Costner, seeking a declaratory judgment that she did not agree to the placement of the sculptures as required by paragraph three of their May 2000 contract. For relief, Detmers sought an order requiring Costner to sell the sculptures with the proceeds dispersed consistent with paragraph three. Detmers claimed that because The Dunbar had not been built within ten years and the sculptures were not "agreeably displayed elsewhere," she was entitled to 50% of the proceeds from the sale of the sculptures.

[¶7.] Before trial, Costner moved to use parol evidence. Detmers objected, requesting a ruling that the May 2000 contract was unambiguous and parol evidence was therefore inadmissible. The circuit court concluded that the May 2000 contract was unambiguous and denied Costner's motion to admit parol evidence. The sole issue at the bench trial was whether the sculptures were "agreeably displayed elsewhere." Costner, Detmers, and Wyss testified at trial.

[¶8.] After post-trial briefing, the court granted judgment in favor of Costner. The court maintained its earlier conclusion that the May 2000 contract

was unambiguous. The court concluded that "'[e]lsewhere,' as used in the contract, clearly means at a site other than The Dunbar." Additionally, "[b]ecause The Dunbar has not been built, any site is elsewhere, i.e., somewhere other than The Dunbar. The placement of the sculptures at Tatanka is elsewhere." The court also concluded: "Detmers actions following the decision to place the sculptures at Tatanka indicate that she agreed to display them at that location. . . ." Detmers appeals.

## STANDARD OF REVIEW

[¶9.]    "We will not set aside a trial court's findings of fact unless they are clearly erroneous." *Alto Twp. v. Mendenhall*, 2011 S.D. 54, ¶ 9, 803 N.W.2d 839, 842. "[W]e review conclusions of law under a *de novo* standard, with no deference to the trial court's conclusions of law." *Id.*

## ANALYSIS

[¶10.]    We restate and consolidate Detmers' issues on appeal to whether the circuit court erred in determining that the sculptures were "agreeably displayed elsewhere," as required under the contract. Under paragraph three, Detmers would only be entitled to specific performance if The Dunbar was not built or the sculptures were not "agreeably displayed elsewhere." The issue at trial was whether Detmers agreed to displaying the sculptures at Tatanka, which is a factual inquiry. The circuit court concluded Detmers agreed, as demonstrated by her conduct and actions, to permanent display of the sculptures at Tatanka.

[¶11.]    On appeal, Detmers does not dispute that she agreed to display the sculptures at Tatanka. Instead, she asserts that she only agreed to the location

because she had been promised or guaranteed that The Dunbar would still be built. Detmers cannot point to anything in the record supporting this assertion other than her own testimony. The circuit court found that Detmers was never promised or guaranteed that the Dunbar would be built. Costner maintained throughout this suit that he continues to attempt to build The Dunbar, but cannot promise it will happen. Detmers has not shown any findings to be clearly erroneous.

[¶12.]        Furthermore, this action centers around a clause in the contract addressing what would happen *if the resort was not built*. The contract itself contemplates the possibility that The Dunbar might not be built. Detmers cannot assert that she was not aware that The Dunbar's future was questionable. Detmers has not demonstrated that the circuit court's finding was clearly erroneous. As to Detmers' argument that the finding was unnecessary, the court appeared to address it because it was an issue raised by Detmers through questioning.

[¶13.]        Detmers asserts that to the extent the court used the testimony of Patrick Wyss to find that Detmers had not been guaranteed The Dunbar would be built, the court erred. The court found: "Testimony from Costner and *others associated with The Dunbar and Tatanka projects* indicates that although Costner has been attempting to build The Dunbar for years, and continues to try to build it, he has never promised Detmers or anyone else that it would actually be built." (Emphasis added.) Presumably, Wyss is an "other[] associated with" the projects as he was the only other person to testify besides Costner and Detmers.

[¶14.]        Wyss was prepared for trial by Costner's counsel. He testified as a fact witness, called adversely as part of Detmers' case-in-chief. Wyss was sequestered,

so he had not heard Costner's testimony, given after being called adversely, or Detmers' testimony. Detmers' counsel asked whether, during the time the sculptures were being placed at Tatanka, "there was not only an understanding by [Wyss] but an understanding by Peggy Detmers that the Dunbar resort was ultimately going to be built." Wyss responded "No." Detmers' counsel then attempted to impeach Wyss with his deposition testimony where he was asked: "So the placement of the monument back in 2002, there was always an understanding, and it was being told to Peggy, that the Dunbar was still going to be built at that time; right?" Wyss responded, "That was my understanding."

[¶15.]    Detmers made a motion after trial to strike Wyss' changed trial testimony. The court denied the motion. Detmers argues that the court should not have relied on Wyss' testimony. A review of Wyss' testimony reveals the context of Wyss' statements and his questioning. During Wyss' deposition, counsel was questioning Wyss on whether "the plan was still to build The Dunbar" when the sculptures were being placed. The context of the questioning shows that Costner and his team were still working towards building The Dunbar, and the placement of Tatanka was important to ensure The Dunbar could go forward if investors committed. Wyss explained at trial that "[t]he context of that conversation was the planned hotel . . . ." He continued to emphasize that "there were efforts in place to attempt to get the hotel built."

[¶16.]    Wyss' responses to Detmers' "impeachment" questions provide the necessary framework for understanding his answers. The circuit court was able to witness Wyss and the questioning at trial to determine credibility and the weight

that should be afforded his testimony. We will not second-guess that determination. Even if the court did err in relying on Wyss' testimony, Detmers has not shown that the finding was clearly erroneous in light of the entire record indicating that Detmers had no reason to assume The Dunbar would be built.

[¶17.]    Detmers also argues that the circuit court erred as a matter of law in its construction of the term "elsewhere." She asserts that "elsewhere" must be somewhere other than the proposed site for The Dunbar. She suggests that the circuit court's conclusion rewrites the contract. Additionally, she argues that if "elsewhere" is ambiguous, it should be construed against Costner. However, Detmers asserted before trial, and the court agreed, that the contract was unambiguous. That decision was not appealed.[2]

[¶18.]    The circuit court concluded as a matter of law that the regular meaning of the term "elsewhere" applied. The court noted that Black's Law Dictionary defines elsewhere as "in another place, in any other place," and Webster's Dictionary defined it as "in or to another place." *See Black's Law Dictionary* 560 (8th ed. 2004). Accordingly, there must first be a designated place to determine if somewhere is "another place." Paragraph three provides: "*if The Dunbar is not built* within ten (10) years *or* the sculptures are not agreeably displayed elsewhere." (Emphasis added.) The designated place is The Dunbar. The

---

2.    "Whether the language of a contract is ambiguous is . . . a question of law." *Pankratz v. Hoff*, 2011 S.D. 69, ¶ 10 n.*, 806 N.W.2d 231, 235 n.*. Even if this Court were to decide that the contract was ambiguous, the language of the contract, in addition to the findings of the circuit court, support judgment for Costner.

circuit court concluded that "elsewhere" meant at a place other than The Dunbar. And because The Dunbar had not been built, Tatanka was elsewhere.

[¶19.] Costner points out that the circuit court and Detmers both assign "elsewhere" its ordinary meaning, i.e., "in another place." The analysis diverges on whether "in another place" means another place from The Dunbar itself or from The Dunbar's intended site. Costner asserts that the circuit court was correct in concluding that "elsewhere" is in a place other than The Dunbar resort itself, which, according to the language, must be *built*. The land could not be built, but the resort could. Furthermore, the terms of the contract plainly do not say The Dunbar *site*.

[¶20.] "Contract interpretation is a question of law" reviewed de novo. *Clarkson & Co. v. Cont'l Res., Inc.*, 2011 S.D. 72, ¶ 10, 806 N.W.2d 615, 618. "When interpreting a contract, 'this Court looks to the language that the parties used in the contract to determine their intention.'" *Id.* ¶ 15, 806 N.W.2d at 619 (quoting *Pauley v. Simonson*, 2006 S.D. 73, ¶ 8, 720 N.W.2d 665, 667-68). "When the words of a contract are clear and explicit and lead to no absurd consequences, the search for the parties' common intent is at an end." *Nelson v. Schellpfeffer*, 2003 S.D. 7, ¶ 8, 656 N.W.2d 740, 743.

[¶21.] The plain words of the contract unequivocally provide that if The Dunbar was not built or the sculptures were not agreeably displayed elsewhere, then Detmers would be entitled to the relief described in paragraph three. "Elsewhere" must be understood in relation to the named place in the contract – The Dunbar. Costner is correct that to accept Detmers argument would rewrite the contract to include The Dunbar's intended location as well as the resort itself. This

we will not do. *See Culhane v. W. Nat'l Mut. Ins. Co.*, 2005 S.D. 97, ¶ 27, 704 N.W.2d 287, 297 ("[W]e may neither rewrite the parties' contract nor add to its language . . . ."). As a matter of law, the court did not err in its conclusion that Tatanka was elsewhere from The Dunbar. This conclusion is supported by giving the terms in the parties' contract their plain and ordinary meaning.

[¶22.] Detmers also alleges that the court was clearly erroneous in finding that Tatanka was intended to be separate and distinct from The Dunbar. She points to newspaper articles and testimony in the record indicating that if The Dunbar is built, Tatanka would be part of the resort property.

[¶23.] The record and numerous exhibits support the circuit court's finding that Tatanka is separate from The Dunbar. Testimony reinforced that Tatanka was constructed and managed as a separate legal entity from The Dunbar proposal. In her response to Costner's proposed findings of fact, Detmers concedes that Tatanka is a stand-alone site. Detmers has not demonstrated that the court was clearly erroneous or made an error of law in determining that Tatanka was separate from The Dunbar.

## CONCLUSION

[¶24.] The circuit court did not err or make any clearly erroneous factual findings in determining that the sculptures are "agreeably displayed elsewhere," in the absence of a guarantee from Costner that The Dunbar would be built. Furthermore, the circuit court did not err in concluding that Tatanka was "elsewhere" under the language of the contract. We affirm.

[¶25.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.