#27891-aff in pt, rev in pt & rem in pt-LSW
**2017 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| THOMAS G. EDGAR and ELIZABETH J. EDGAR, husband and wife, | Plaintiffs and Appellees, |
| v. | |
| BOYD D. MILLS and MERLYN J. MILLS, husband and wife, | Defendants and Appellants. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
FAULK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TONY L. PORTRA
Judge

\* \* \* \*

| | |
|---|---|
| ROBERT M. RONAYNE THOMAS J. COGLEY Ronayne & Cogley, PC Aberdeen, South Dakota | Attorneys for plaintiffs and appellees. |
| JAY R. GELLHAUS CHAD LOCKEN of Gellhaus & Gellhaus, PC Aberdeen, South Dakota | Attorneys for defendants and appellants. |

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2017
OPINION FILED **03/15/17**

#27891

WILBUR, Justice

[¶1.]    In this breach of contract action, the circuit court found a lease agreement ambiguous and considered parol evidence. The court concluded that the parties intended the lease agreement to be a lease with an option to purchase. The court ordered specific performance, compelling the owners of the real estate to execute a warranty deed in favor of the lessees. The owners appeal. We affirm in part, reverse in part, and remand.

## Background

[¶2.]    In 2003, Thomas and Elizabeth Edgar entered into a written agreement with Boyd and Merlyn Mills concerning land in Faulk County, South Dakota, legally described as the West Half of Section 26, Township 118, Range 71 West of the Fifth Principle Meridian, Faulk County, South Dakota (Section 26). The agreement was titled, "Lease Agreement." The Edgars agreed to pay the Millses $8,641.20 in rent yearly on January 1st following the previous crop year. The lease agreement was set to terminate on February 28, 2013, and contained an option for the Edgars to renew the lease.

[¶3.]    The lease agreement contained a provision titled, "Right of First Refusal." That provision provided:

> It is hereby agreed that should said land become subject to sale after completion of the crop season in the final year of this lease, that in such an event, the Lessee shall have the right of first refusal to buy said property at a price set by making the final lease payment as described above plus the additional sum of Seven Thousand Two Hundred One and no/100 Dollars ($7,201.00). This first right of refusal shall be only during the term of this lease.

The lease agreement also contained a provision requiring the Millses' written consent before the Edgars could sublease the real estate.

[¶4.]       Beginning in 2003, the first year of the agreement, the Edgars made a late lease payment. In the following years, the Edgars continued to make late payments and paid less than the full amount owed. The Edgars made no payment for the payment due January 1, 2007. Two provisions in the agreement concerned lease payments. Under a section titled, "Terms of Lease," the agreement provided in part:

> Further, should Lessee fail to tender payment as described above on any of the due dates described above, then within sixty (60) days this lease shall become null, void, and of no force and effect and the Lessor shall be free to obtain another Lessee for the above described real estate.

In a subsequent section entitled, "Default," the agreement provided in part:

> If any one or more of the following occurs; (1) a rent payment from Lessee to Lessor shall not be paid when due and payable . . . then Lessor may, at Lessor's sole option, declare this lease forfeited and the term of the lease ended and the Lessor may reenter said premises with or without due process of law using such reasonable force as may be necessary to remove all persons or chattels therefrom.

It is undisputed that the Millses never declared the lease forfeited and that neither party considered the lease agreement null and void after the late payments.

[¶5.]       In 2012, Thomas Edgar contacted Attorney Timothy Bormann to prepare a warranty deed so that the Millses could convey the real estate to the Edgars. Thomas later testified that he contacted Attorney Bormann because he believed that he had an option to purchase the real estate at the conclusion of the lease term. Thomas claimed that the "Right of First Refusal" gave the Edgars an

option to purchase the property so long as the Edgars made all their payments under the lease, plus $7,201. Thomas presented Attorney Bormann a check for approximately $16,146, representing the amount the Edgars believed they owed to pay off the contract. Attorney Bormann drafted the deed and presented it to the Millses. The Millses refused to sign.

[¶6.] After the Edgars' subsequent attempts to execute the deed with the Millses failed, the Edgars sued the Millses for specific performance and fraud. The Millses answered and asserted multiple counterclaims, including that the Edgars breached the terms and conditions of the lease agreement by failing to make full lease payments and by subletting the property without the Millses' permission. The Edgars replied to the Millses' counterclaims but did not raise any affirmative defenses. The parties set April 14, 2016 as the date for a court trial. The record indicates that the parties agreed to procedurally expedite the case because of the upcoming crop season.

[¶7.] On April 1, 2016, the Millses moved for summary judgment. They asserted that the Edgars' failure to make timely payments of rent rendered the lease agreement null and void by its terms. The Millses further asserted that the plain language of the lease agreement did not contemplate conveyance of the real estate, only a right of first refusal under the specific terms described. On April 12, 2016, the Edgars filed an amended reply to the Millses' counterclaims, raising the affirmative defenses of waiver, laches, statute of limitations, fraud, and misrepresentation. The Edgars also responded to the Millses' motion for summary judgment, asserting that the lease agreement was ambiguous.

[¶8.]     On April 14, 2016, the circuit court held a court trial.  Before the court took evidence, the Millses orally requested that the court strike the Edgars' amended reply to the Millses' counterclaim.  The Millses argued that they would be prejudiced by the addition of affirmative defenses because, according to the Millses, they "were only given two days' notice to prepare for affirmative defenses[.]"  Counsel for the Edgars responded that they would agree to a continuance if the Millses "think[] this prejudices them and they want to continue this trial[.]"  Counsel for the Millses responded, "Your honor, the defendants are not requesting a continuance.  We would simply request that the amended reply be stricken."  The court denied the Millses' request, stating, "[I]t appears to me that all parties are aware of the issues and would have had adequate opportunity to prepare today knowing full well the other party's positions and the relative strength and weaknesses of their own case."

[¶9.]     Counsel for the Millses then requested that the court rule on the Millses' motion for summary judgment.  The court indicated that it did not intend on making a ruling on the summary judgment motion before the court trial and reserved the right to rule on the motion after the trial.  It said, "[W]hether [it] has found questions of fact and have resolved them for, or against one side or the other, or if the [c]ourt finds as a matter of law that one side or the other is entitled to a decision today," the court would clearly indicate what it based its decision on when it made its ruling.

[¶10.]     Counsel for the Millses then brought up its concern about the court considering parol evidence prior to finding the contract ambiguous.  Counsel

objected to the admission of any testimony related to the creation of the lease agreement without a prior ruling that the lease agreement was ambiguous. The court informed the parties that it would receive testimony prior to making a determination of ambiguity. It explained that, because this was a court trial, the evidence would come before the court regardless. It would come as an offer of proof or as evidence. The court informed the parties that it would sift through the evidence to determine what evidence would be appropriate to consider in deciding the issue of ambiguity.

[¶11.] After addressing the preliminary matters raised by the Millses, the court began the trial and heard testimony from Kathleen Boysen, Thomas Edgar, Attorney Bormann, Cara Nelson, and Merlyn Mills. We summarize the evidence as follows. The Edgars had originally leased the real estate in Section 26 from its previous owner, F.B. Family, Inc. Kathleen was the president of F.B. Family, Inc. She testified that from 1999-2003, the lease agreements between F.B. Family, Inc. and the Edgars gave the Edgars an option to purchase the land for $72,000 on a certain date at the end of the given lease terms. Although the Edgars did not exercise the option in the first year, in 2003, the Edgars gave Kathleen notice of their intent to exercise the option to purchase the property. The parties scheduled a closing for April 4, 2003, and the Edgars agreed to pay $10 for the recording fee at the closing.

[¶12.] According to Thomas, on April 4, 2003, he approached Kathleen at church and explained that he was unable to come up with the necessary funds to close the sale. He asked Kathleen if she would be willing to sell the land to him on

a contract for deed. In her role as president of F.B. Family, Inc., she declined. Thomas claimed that he then asked if she would allow Boyd Mills, a local veterinarian, to finance the transaction on the Edgars' behalf and allow the Edgars to assign their option to purchase to Boyd. Kathleen agreed. Kathleen testified that she documented her conversation with Thomas with a handwritten note and filed the note with F.B. Family, Inc.'s corporate records.

[¶13.] On April 9, 2003, the Edgars assigned their option to purchase to Boyd Mills. On April 19, 2003, F.B. Family, Inc. and Boyd and Merlyn Mills completed the sale, and the Millses recorded the deed. The Millses paid F.B. Family, Inc. $72,010 for the real estate, which was valued at approximately $121,082. According to the Edgars, after the sale, the Millses were to lease the land to the Edgars on a contract for deed. Thomas testified that he met with Attorney Bormann and asked that he prepare a contract for deed. Merlyn Mills testified that she contacted Attorney Bormann and instructed him that the agreement should be a lease.

[¶14.] It is undisputed that in June 2003, Attorney Bormann presented the Edgars with a lease agreement. Thomas testified that he read the lease agreement prior to signing it. He acknowledged that the lease did not contain specific language providing an option to purchase. He, however, testified that he believed the contract allowed him to purchase the real property at the conclusion of the lease term upon the payment of an additional $7,201. The Edgars signed the lease agreement on June 25, 2003.

[¶15.] Attorney Bormann testified that the parties did not want a contract for deed. He also testified that he explained the lease agreement to Thomas Edgar.

Attorney Bormann claimed that the right of first refusal gave the Edgars the right "if the land was for sale, he'd have the first option to buy it." Attorney Bormann admitted that at the conclusion of the lease term and at the request of Thomas, he prepared a deed in an attempt to get the matter settled with the Millses.

[¶16.] Merlyn Mills testified that her understanding of the lease agreement was that it was just that, a lease. She claimed that she came up with the rent amount by multiplying the purchase price by 12%. She also asserted that the Edgars would not be able to own the land if they did not make all the lease payments. She believed that the lease would become null and void if the Edgars did not make their payments. She agreed, however, that the Edgars would have a right of first refusal to purchase the land if the Edgars made all their payments and the Millses decided to sell the real estate.

[¶17.] At the conclusion of the court trial, the court ruled that there is no fraud or misrepresentation. The court denied the Millses' motion for summary judgment because it found the lease agreement ambiguous, "especially as to the right of first refusal." The court also found the language concerning default and failed lease payments ambiguous. Because of the ambiguities in the lease agreement, the court informed the parties that it would consider parol evidence.

[¶18.] After considering the parol evidence, the court found that the Edgars breached the contract when they failed to make a lease payment in the 2007 crop year. The court also found that many of the Edgars' payments were untimely. The court, however, did not rule that the "only remedy" was "to forfeit the matter" or "forfeit the lease" because the Millses "continued to accept those payments from

him, including the last payment of roughly $15,000." Instead, the court ordered the Edgars to pay the Millses the delinquent payments and the missed payment with interest at 5%. The court also ordered that the Edgars reimburse the Millses for taxes paid by the Millses in 2013, 2014, and 2015 with 10% interest. The court held that the lease agreement was in fact an agreement that upon payment in full at the end of the lease term the Edgars would receive the real estate. Therefore, the court granted the Edgars' request for specific performance and ordered the Millses to execute a warranty deed in favor of the Edgars "if [the Edgars] make[ ] these payments as ordered by the [c]ourt[.]" The court entered findings and conclusions and an order consistent with its oral ruling.

[¶19.]     The Millses appeal, and we restate the issues as follows:

1. The circuit court erred when it granted the Edgars leave to file an amended reply to include affirmative defenses.

2. The court erred when it admitted parol evidence prior to ruling that the parties' contract was ambiguous and prior to ruling on the Millses' motion for summary judgment.

3. The court erred when it interpreted the parties' agreement to be ambiguous.

4. The court erred when it ordered specific performance on an ambiguous contract.

5. The court erred when it failed to declare the agreement null and void and failed to apply the doctrine of unclean hands.

The Millses also request an award of appellate attorney's fees.

## Analysis

**1. Did the circuit court err when it granted the Edgars leave to file an amended reply to include affirmative defenses?**

[¶20.]     The Millses contend that they were unfairly prejudiced when the circuit court granted the Edgars leave to file an amended reply two days before the court trial. The prejudice occurred, according to the Millses, because they were "not expecting any affirmative defenses, and did not have adequate time to prepare for an affirmative defense." In response, the Edgars assert that the amended reply caused no prejudice. The Edgars claim that it was clear from the original pleadings that both parties knew the positions alleged by the other. So, in the Edgars' view, "[i]t is difficult to fathom what additional information [the Millses] would have needed or uncovered to defend against an affirmative defense such as waiver or laches."

[¶21.]     Under SDCL 15-6-15(a), leave to amend "shall be freely given when justice so requires." We review a court's decision to grant leave to a party to amend a pleading for an abuse of discretion. *Isakson v. Parris*, 526 N.W.2d 733, 736 (S.D. 1995). Here, the court did not abuse its discretion. In response to the Millses' objection to the Edgars' amended reply, the Edgars offered to agree to a continuance. The Millses declined and requested only that the court strike the affirmative defenses. The court refused to strike the amended reply based on its conclusion that the amended reply asserted defenses known to the Millses. The court also believed that both sides had adequate time to prepare because they fully knew the other side's arguments. From our review of the record, the Millses were aware of the Edgars' defenses, and there is no evidence that the Millses suffered specific prejudice.

**2. Did the court err when it admitted parol evidence prior to ruling that the parties' contract was ambiguous and prior to ruling on the Millses' motion for summary judgment?**

[¶22.] The Millses contend the court improperly considered parol evidence because the court admitted the evidence before finding the contract ambiguous and before ruling on the summary judgment motion. As proof that the court erred, the Millses rely on the fact the circuit court entered twenty-four findings of fact related to parol evidence prior to making the legal conclusion that the contract was ambiguous. The Millses further contend that the court's failure to rule on their summary judgment motion "amounts to an error of law in the proceedings."

[¶23.] The Millses' view requires us to assume that the circuit court *in fact* considered parol evidence in making its decision on ambiguity and in deciding whether to deny the Millses' motion for summary judgment. But we have said "that in an action tried to the trial court, there exists a presumption that the trial court will disregard inadmissible evidence" and that a court is "equipped to sift through any excess or perceived inadmissible evidence." *Shippen v. Parrot*, 506 N.W.2d 82, 86 (S.D. 1993), *overruled on other grounds by Jensen v. Kasik*, 2008 S.D. 113, 758 N.W.2d 87. Moreover, South Dakota's parol evidence rule "is in no sense a rule of evidence, but a rule of substantive law." *Poeppel v. Lester*, 2013 S.D. 17, ¶ 19, 827 N.W.2d 580, 584 (quoting *Auto-Owners Ins. Co. v. Hansen Housing, Inc.*, 2000 S.D. 13, ¶ 14, 604 N.W.2d 504, 510).

[¶24.] Here, the court indicated that it would sift through the evidence presented during the court trial and consider only admissible evidence when making its legal ruling on ambiguity and on the Millses' motion for summary

judgment. The court also informed the parties that it would "let the parties know for purposes of the record and any potential appeals" the basis of the court's decision. We conclude that the court did not err when it allowed the admission of parol evidence before finding the lease agreement ambiguous and before denying summary judgment.

### 3. Did the court err when it interpreted the parties' agreement to be ambiguous?

[¶25.] The Millses argue that the parties' lease agreement is an unambiguous lease with a provision for a right of first refusal under the described terms. The Millses direct this Court to the fact that the agreement is titled, "Lease Agreement," in large, bold, and unambiguous terms. They note that the lease refers to the parties as "lessor" and "lessee." The Millses further claim that the language of the lease agreement makes clear that it was not an option contract. They highlight that the agreement contains no language requiring the lessor to sell the property. Instead, according to the Millses, the right of first refusal appropriately requires a condition precedent before ripening—"should the said land become subject to sale" and "that in such an event."

[¶26.] We review de novo the circuit court's conclusion that the lease agreement was ambiguous. *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354. "A contract is ambiguous when application of rules of interpretation leave[s] a genuine uncertainty as to which of two or more meanings is correct." *Id.* ¶ 16 (quoting *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235). Under the rules of contract interpretation, "this Court looks to the language that the parties used in the contract to determine their

intention." *Poeppel*, 2013 S.D. 17, ¶ 16, 827 N.W.2d at 584 (quoting *Detmers v. Costner*, 2012 S.D. 35, ¶ 20, 814 N.W.2d 146, 151). We examine the language of an agreement as a whole to determine the terms and conditions. *Id.*

[¶27.]    This issue concerns the provision titled, "Right of First Refusal." The Millses contend that the provision is just that—a right of first refusal. The Edgars, on the other hand, claim the provision is an option to purchase that arises upon the Edgars' final payment under the lease plus $7,201. We have said that a right of first refusal requires the owner to first offer the property to the holder of the right on the same terms as a third-party offer when the owner receives a third-party offer to purchase the premises and manifests an intention or desire to sell on those terms. *Dowling Family P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 16, 865 N.W.2d 854, 861; *Laska v. Barr*, 2016 S.D. 13, ¶ 6, 876 N.W.2d 50, 53.

[¶28.]    From our review of the lease, the parties did not create a traditional right of first refusal. That, however, does not mean that an ambiguity exists or that the parties intended to create an option to purchase. When the language of a contract is plain and unambiguous, it is our duty to interpret it and enforce it as written. *Discover Bank v. Stanley*, 2008 S.D. 11, ¶ 17, 757 N.W.2d 756, 762. The language of the right of first refusal is unambiguous in what right it creates. The Edgars have a right of first refusal to buy the property if the property becomes "subject to sale after completion of the crop season in the final year of this lease[.]" To exercise the right, the Edgars must pay the Millses the final lease payment plus $7,201. But the right only exists if the property is subject to sale after the completion of the final crop year. Because the "Right of First Refusal" provision is

unambiguous, the circuit court erred when it considered parol evidence to determine the parties' intent.

[¶29.] The court also erred when it used parol evidence to convert the lease agreement into a purchase contract and to order specific performance against the Millses. The court rewrote the lease agreement contrary to our well-established rule that in ascertaining the parties' intent, we will not rewrite the parties' contract or add to its language. *Detmers*, 2012 S.D. 35, ¶ 21, 814 N.W.2d at 151. "Contracting parties are held to the terms of their agreement, and disputes cannot be resolved by adding words the parties left out." *Gettysburg School Dist. 53-1 v. Larson*, 2001 S.D. 91, ¶ 11, 631 N.W.2d 196, 200-01.

[¶30.] Because the terms of the right of first refusal are unambiguous, we reverse the court's order directing the Millses to execute a warranty deed in favor of the Edgars. We remand for the court to determine the parties' remaining rights and obligations under the lease agreement. In light of our holding on this issue, we need not address the Millses' other issues on appeal.

### 4. Appellate Attorney's Fees

[¶31.] The Millses filed a motion for appellate attorney's fees under SDCL 15-26A-87.3. The Millses assert that an award of fees is allowable under the lease agreement. The Millses request an award totaling $8,722.35 and have included a verified and itemized statement of legal services rendered.

[¶32.] Appellate attorney's fees may be granted 'in actions where such fees may be allowable[.]" SDCL 15-26A-87.3. The lease agreement provides:

> If Lessor at any time, by reason of any breach of this lease by
> Lessee, is compelled to incur any expense including reasonable

> attorney fees in instituting or prosecuting any action or proceeding to enforce Lessor's rights hereunder, the sum or sums so paid by Lessor with interest at the legal rate per annum from the date of payment thereof shall be deemed to be additional damages hereunder and shall be due from Lessee to Lessor on the 1st day of the month following the payment of such respective sums or expenses.

It is undisputed that the Edgars breached the lease agreement and that as a result, the circuit court ordered the Edgars to pay the two underpayments and one missed payment, plus interest. Under the lease, the Millses are entitled to reimbursement of their reasonable attorney's fees incurred by reason of the breach. We award the Millses $4,836.77 in appellate attorney's fees.

[¶33.]     Affirmed in part, reversed in part, and remanded.

[¶34.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.