#29105, #29120-aff in pt & rev in pt-SRJ
**2020 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MICHAEL DOUGLAS KOOPMAN,                    Plaintiff and Appellee,

    v.

CITY OF EDGEMONT BY MAYOR
JERRY J. DRIBBLE,                                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
FALL RIVER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANE WIPF PFEIFLE
Judge

* * * *

PATRICK M. GINSBACH of
Farrell, Farrell & Ginsbach, P.C.
Hot Springs, South Dakota                    Attorneys for plaintiff and
                                                             appellee.


REBECCA L. MANN of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                      Attorneys for defendant and
                                                             appellant.

* * * *

CONSIDERED ON BRIEFS
APRIL 20, 2020
OPINION FILED **06/24/20**

JENSEN, Justice

[¶1.]    Michael Koopman filed this action, which originated in small claims court, against the City of Edgemont (City) alleging he was owed employee benefits under the City's Personnel Manual (Manual).  Following a bench trial, the circuit court found that Koopman was a City employee as of December 3, 2012, but only awarded employee benefits to Koopman under the Manual after his appointment as City Engineer/Code Officer on May 6, 2014.  The court entered a judgment in favor of Koopman for employee benefits, but denied Koopman's motion for attorney fees. City appeals arguing the circuit court erred in determining Koopman was a City employee and in awarding benefits beyond those provided for in a written agreement between City and Koopman.  We affirm in part and reverse in part.

### Facts and Procedural History

[¶2.]    Koopman is a licensed engineer who retired early from employment with the State of Wyoming in 2000.  Koopman's retirement agreement imposed a maximum limit on his post-retirement earnings of $1,000 per month until he turned 66 years old in March 2015.

[¶3.]    Koopman moved to Edgemont in 2012, as the City was converting to a new water system.  The City's mayor approached Koopman about providing consulting services for the water system as well as code enforcement duties. Koopman submitted written proposals to provide both project engineering and building code enforcement services to City at set hourly rates, but in no event was he to be paid more than $1,000 per month for his work.  City and Koopman executed a written Agreement for Professional Services (Agreement) on July 13,

2012 for Koopman to provide project engineering, building inspection, and code compliance services to City. The Agreement set forth the hourly rates for his services and provided for reimbursement of his travel expenses. The Agreement also recited that "[n]o other benefits are requested or are part of this agreement." Koopman immediately began providing services to City.

[¶4.]     Koopman and the mayor agreed that Koopman would work a regular 35-hour schedule Monday through Friday of every other week. Koopman submitted a monthly invoice for his services which were always in the amount of $1,000, regardless of the number of hours worked. City did not withhold any taxes from Koopman's monthly payments.

[¶5.]     This arrangement continued until late 2012, when Koopman asked if the City would begin issuing payroll checks to him and withholding federal income taxes, Social Security, and Medicare from his compensation. City agreed and provided Koopman the City's Personnel Manual, for which he signed an acknowledgment of receipt of the Manual. Koopman also submitted a W-4 form required of all employees for withholding payroll taxes. City began issuing payroll checks to Koopman and withholding payroll taxes in December 2012. However, Koopman continued to submit monthly invoices for payment in the amount of $1,000. Koopman was paid monthly, unlike other City employees who were paid every two weeks. Koopman continued to provide the same services to City and work the same schedule after December 2012.[1]

---

1.    In 2013, Koopman and the City's mayor signed a memorandum reaffirming the terms of the December 2012 arrangement. The memorandum reaffirmed

(continued . . .)

[¶6.]     When Koopman began receiving payroll checks, his paystubs showed that he was accruing vacation and sick leave, a benefit provided to eligible employees in the Manual. This continued until February 2014 when the City finance officer deleted the vacation and sick leave shown to be accruing on his paystubs. She told Koopman that he was not entitled to additional benefits under his Agreement and the accrued leave shown on his paystubs was an error. Koopman did not object to the finance officer deleting the accrued vacation and sick leave or discuss this action with any other city official.

[¶7.]     On May 6, 2014, the City Council adopted a written Resolution appointing Koopman as City Engineer/Code Officer. The Resolution entitled "Agreement for Services" stated that Koopman was "to provide those services outlined in the [Agreement]." It further provided that Koopman would continue to be paid $1,000 per month. In addition, the Resolution stated that "the City agrees to provide a City cell phone, to pay for basic monthly charges and provide motel, meals, & Mileage ($.37 per mile) for travel outside of [City] with Council approval." Koopman accepted the appointment and took the oath of office. The Resolution provided that Koopman's appointment was for a period of one year, until May 5, 2015. After the appointment, Koopman continued providing the same services, working the same schedule, and submitting monthly invoices for payment of

_____

(. . . continued)
    the Agreement between City and Koopman for his services and did not provide for any additional compensation or benefits. Koopman expressed a desire to renegotiate the terms of the agreement after he turned 66 in 2015.

compensation in the amount of $1,000. Koopman's pay stubs did not show any accruing vacation, sick leave, or other benefits after his appointment.

[¶8.]        In March 2015, Koopman turned 66. At this time, he asked City to pay him hourly rates for his services, rather than the capped monthly rate of $1,000. Koopman claimed that these rates were consistent with the rates already in place and reminded City that he was not receiving any additional benefits. At the May 5, 2015 City Council meeting, Koopman was not reappointed as City Engineer/Code Officer. Koopman subsequently filed for unemployment benefits asserting he was an employee of City. The Department of Labor determined Koopman was an employee of City and awarded him unemployment benefits.

[¶9.]        Koopman filed a small claims action against City on April 27, 2017, seeking employee benefits under the Manual from December 2012, when he claims he became a City employee. The City petitioned to remove the case from small claims court, and the case was transferred to circuit court. City argued that Koopman was an independent contractor and therefore not eligible for benefits under the Manual. City also argued that regardless of Koopman's employment status, he was not entitled to any additional benefits outside the terms of the Agreement.

[¶10.]       The circuit court held that Koopman became a City employee in December 2012 when he signed a W-4 to withhold taxes and began receiving payroll checks. However, the court determined that Koopman was not entitled to any of the benefits in the Manual until May 2014, when he was appointed as City Engineer/Code Officer. The circuit court found that from May 6, 2014 through May

5, 2015, the Manual provided Koopman with the following benefits as an appointed City official: $727.20 for water bill reimbursement, $2,484 for holiday pay, $2,161.08 for vacation pay and $6,000 for health insurance, for a total judgment of $11,372.28. The court also calculated prejudgment interest on the award in the amount of $4,651.87.

[¶11.]     Following the court's ruling, Koopman filed a motion for attorney fees under SDCL 60-11-24.[2]  The circuit court denied the motion, determining that SDCL 60-11-24 only authorized attorney fees on wage claims removed for a jury trial under SDCL 15-39-59, which had been repealed.  The circuit court further reasoned that the City had removed the case under SDCL 15-38-57 and the language of SDCL 60-11-24 does not specifically authorize attorney fees for a case removed under SDCL 15-38-57.

[¶12.]     We address the following issues on appeal:

1. Whether Koopman was entitled to employee benefits in the Manual.

2. Whether Koopman was entitled to attorney fees under SDCL 60-11-24.

## Standard of Review

[¶13.]     "Findings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Estate of*

---

2.     SDCL 60-11-24 provides: "In any action for wages brought in small claims court which is removed to magistrate court or circuit court under § 15-39-59, the court may, in addition to awarding judgment to the plaintiff, allow costs of the action including reasonable attorney fees to be paid by the defendant."

*Henderson v. Estate of Henderson*, 2012 S.D. 80, ¶ 9, 823 N.W.2d 363, 366 (quoting SDCL 15-6-52(a)). "Conclusions of law are reviewed under a de novo standard, 'with no deference to the trial court's conclusions of law.'" *Id.* (quoting *Detmers v. Costner*, 2012 S.D. 35, ¶ 9, 814 N.W.2d 146, 149).

[¶14.] The "existence of a valid contract is a question of law[,]" which is reviewed de novo. *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 20, 698 N.W.2d 555, 566 (quoting *In re Estate of Neiswender*, 2000 S.D. 112, ¶ 9, 616 N.W.2d 83, 86). Likewise, "the interpretation of a contract is a question of law, which is reviewed de novo." *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 18, 714 N.W.2d 884, 892. "If in dispute, however, the existence and terms of a contract are questions for the fact finder." *Behrens*, 2005 S.D. 79, ¶ 20, 698 N.W.2d at 566 (quoting *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992)).

## Analysis and Decision

*1. Whether Koopman was entitled to employee benefits in the Manual.*

[¶15.] The parties agree that Koopman initially provided services to City as an independent contractor, but disagree as to whether he later became an employee of City. City challenges the court's conclusion that Koopman became an employee when he started receiving payroll checks in December 2012, and also argues that Koopman was not entitled to any additional benefits outside the terms of the Agreement. Koopman argues that the circuit court correctly determined that he became an employee in December 2012, but should have awarded him benefits from that time rather than from the time of his appointment as a City official in May 2014.

[¶16.]     SDCL 53-1-3 provides that "[a] contract is either express or implied." "An express contract exists only when the parties mutually express an intent to be bound by specific terms and conditions." *Neiswender*, 2000 S.D. 112, ¶ 9, 616 N.W.2d at 86 (quoting *Owens v. Moyes*, 530 N.W.2d 663, 665 (S.D. 1995)).  The Agreement entered into between City and Koopman was an express written contract that set forth the services to be provided by Koopman and his compensation for those services.  Further, the Agreement limited Koopman's benefits to those provided in the Agreement, by stating that "no other benefits are requested or are part of this Agreement."

[¶17.]     Although concluding that Koopman became a City employee in December 2012, the circuit court rejected his claim for benefits contained in the Manual for the period from December 2012 through May 2014, determining that the terms of the Agreement controlled his compensation and benefits.  However, the court reasoned that the Resolution appointing Koopman as City Engineer/Code Officer "altered the written contract with a new writing."  The circuit court relied on SDCL 53-8-7 which provides, "[a] contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise."  The court concluded that as an appointed official under the Manual, Koopman was entitled to the benefits in the Manual, including cancellation of water bills, vacation and sick leave, holiday pay, health insurance and life insurance.

[¶18.]     The circuit court correctly denied Koopman's claim for additional benefits from December 2012 through May 2014.  The Agreement provided that it could only be terminated by written notice, and there is no evidence that either

party took any action to terminate the Agreement. Rather, Koopman continued to provide the same services and was paid the compensation as provided in the Agreement. Additionally, both parties continually referenced the terms of the Agreement after December 2012. Even as late as June 5, 2015, after Koopman's position with the City had ended, Koopman continued to claim that the Agreement was in force.

[¶19.]     Koopman relies on the Manual to support his claim that City was obligated to provide him additional benefits beginning in December 2012. However, the Manual was not a contract. As such, it could not modify the express terms of the Agreement. The Manual contained a disclaimer stating:

> This manual does not confer a contract of employment. The policies, procedures, rules and benefits contained herein are subject to change upon a majority vote of the council. These policies are provided as a reference of present policies and not a guarantee of employment or specific employment benefits.

Further, the acknowledgement form signed by Koopman provided, "I understand the policies, rules and benefits described are subject to change or may be revised. . . . It is expressly understood that the contexts of this manual do not constitute the terms of a contract of employment . . . ." The language of the Manual expressed a clear intention that the City was not contractually bound by any provisions in the Manual. See *Neiswender*, 2000 S.D. 112, ¶ 9, 616 N.W.2d at 86.

[¶20.]     We have previously recognized that an employment handbook may create an implied contractual obligation with respect to the terms and conditions of employment. *Harvey v. Reg'l Health Network, Inc.*, 2018 S.D. 3, ¶ 54, 906 N.W.2d 382, 397-98. *See also Nelson v. WEB Water Dev. Ass'n, Inc.*, 507 N.W.2d 691, 696

(S.D. 1993); *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275, 277 (S.D. 1983). However, an implied contract cannot exist where the Agreement between City and Koopman governed their employment relationship and the terms of compensation. "Where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise." *FB & I Bldg. Prods., Inc. v. Superior Truss & Components, a Div. of Banks Lumber, Inc.*, 2007 S.D. 13, ¶ 18, 727 N.W.2d 474, 479 (quoting *Mid-America Mktg. Corp. v. Dakota Indus., Inc.*, 281 N.W.2d 419, 425 (S.D. 1979). "Only when parties do not expressly agree will the law intercede and determine whether the conduct of the parties has created an implied contract." *Aberle v. City of Aberdeen*, 2006 S.D. 60, ¶ 19, 718 N.W.2d 615, 621.

[¶21.] Here, the language of the Agreement set forth the services to be provided by Koopman, the compensation to be paid by City for those services, and expressly provided that "no other benefits are requested or are part of this Agreement." Based upon the express terms of the Agreement, the circuit court correctly determined that Koopman was not entitled to any of the benefits listed in the Manual as of December 2012.

[¶22.] After Koopman was appointed by written Resolution as a City official in May 2014, the circuit court determined that the Resolution altered the terms of the Agreement pursuant to SDCL 53-8-7. However, there is no showing that the parties intended to terminate the Agreement. Further, Article 9 of the Agreement provided that it could only be modified with a writing between the parties: "Such changes, *including any increase or decrease in the amount of [Koopman's]*

*compensation,* which are mutually agreed upon by both Parties, *shall be incorporated in written amendment to this Agreement.*" (Emphasis added).

[¶23.]     Although the Resolution modified some of the terms of the Agreement, the circuit court erred in concluding that Koopman was entitled to additional benefits under the Manual after his appointment as City Engineer/Code Officer. The Resolution reaffirmed the basic work and compensation terms of the Agreement by stating that Koopman would continue "to provide those services outlined in the [Agreement]" and that City would continue to pay Koopman $1,000 per month.  The modifications of the Agreement via the Resolution were limited to providing Koopman with a City cell phone, reducing his mileage reimbursement to $.37 per mile, and modifying his term of service to a period of one year.  The Resolution did not provide for any other changes to his compensation or benefits.

[¶24.]     "This Court need only look to the language that the parties used in the contract to determine their intention." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 16, 709 N.W.2d 350, 355.  "If that intention is clearly manifested by the language of the agreement, it is the duty of this Court to declare and enforce it." *Id.* (quoting *In re Estate of Stevenson*, 2000 S.D. 24, ¶ 14, 605 N.W.2d 818, 821).  Outside of the limited written modifications to Koopman's existing Agreement, nothing in the City's Resolution indicated that the other provisions in the Agreement were no longer applicable, particularly the express provision precluding any benefits outside of those stated in the Agreement. Therefore, Koopman was not entitled to any benefits in the Manual during the time he provided services for City.

[¶25.]    However, even if the appointment of Koopman as a City official triggered the provisions in the Manual relating to benefits for appointed officials, the circuit court's decision to award Koopman additional benefits was nevertheless erroneous.  The Manual delineates which policies designated therein apply to appointed officials.  Manual, Policy #12.4.  The benefits in the Manual that the circuit court awarded to Koopman are all governed based on how an individual employee is classified.  Manual, Policy #6.5 and #7.2.  Consistent with the evidence, the circuit court found that Koopman did not work 20 or more hours per week.  Therefore, he did not qualify for the benefits afforded to regular full-time or part-time employees.  Rather, he fell within the classification for temporary or seasonal employees who "work for less than 20 hours per week."  Manual policy #3.1 provides that such employees are not entitled to any benefits.

[¶26.]    Because we conclude Koopman was not entitled to any of the benefits in the Manual while he was providing services to City, it is unnecessary to resolve the question of whether Koopman was an employee or independent contractor after December 2012.

        2.  *Whether Koopman was entitled to attorney fees under SDCL 60-11-24.*

[¶27.]    South Dakota applies the "American rule for attorney fees in 'that each party bears the burden'" of paying their own attorney fees.  *Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 28, 827 N.W.2d 859, 867 (quoting *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d 85, 98).  One exception is where attorney fees are authorized by statute.  "In determining whether a statute authorizes the award of attorney's fees, 'this Court

has rigorously followed the rule that authority to assess attorney fees may not be implied, but must rest upon a clear legislative grant of power.'" *Long v. State*, 2017 S.D. 78, ¶ 10, 904 N.W.2d 358, 362 (quoting *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 32, 827 N.W.2d 55, 67).

[¶28.]     SDCL 60-11-24 provides that in an action for wages removed to magistrate court or circuit court under SDCL 15-39-59, the court may award reasonable attorney fees "in addition to awarding judgment to the plaintiff." The language of the statute does not authorize an award of attorney fees unless the plaintiff prevails on the wage claim. Because we reverse the circuit court's award of employee benefits to Koopman, his claim for attorney fees fails.

## Conclusion

[¶29.]     We affirm the circuit court's decision denying Koopman any additional employee benefits under the Manual from December 3, 2012 to May 6, 2014. We reverse the circuit court's entry of the judgment in favor of Koopman for benefits under the Manual from May 6, 2014 through May 5, 2015. Koopman is not entitled to attorney fees under SDCL 60-11-24 because he did not prevail on his wage claim.

[¶30.]     GILBERTSON, Chief Justice, and KERN, SALTER, DEVANEY, Justices, concur.