#30807, #30827-aff in pt & rev in pt-PJD
**2025 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RODNEY ALEXANDER,                                    Plaintiff and Appellant,

   v.

ESTATE OF STEVE HOBART and
NICK HOBART,                                         Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOSHUA HENDRICKSON
Judge

\* \* \* \*

JESS M. PEKARSKI
GARRETT J. KEEGAN of
Costello, Porter, Hill, Heisterkamp,
   Bushnell & Carpenter, LLP
Rapid City, South Dakota                             Attorneys for plaintiff and
                                                     appellant.


RICHARD M. WILLIAMS
AIDAN F. GOETZINGER of
Gunderson, Palmer, Nelson &
   Ashmore, LLP
Rapid City, South Dakota                             Attorneys for defendant and
                                                     appellee Nick Hobart.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 18, 2025
OPINION FILED **07/23/25**

\* \* \* \*

GREGORY G. STROMMEN of
DeMersseman Jensen Tellinghuisen &
   Huffman, LLP
Rapid City, South Dakota               Attorneys for defendant and
                                     appellee Estate of Steve Hobart.

#30807, #30827

DEVANEY, Justice

[¶1.]	Rodney Alexander and Steve Hobart entered into an agreement giving Alexander a right of first refusal to purchase Steve's cattle and to have Steve's national forest livestock grazing permit transferred to him. They, along with Steve's son Nick, later signed an addendum clarifying that the agreement extended to Nick.[1] Several years later, Nick sold the cattle, and the permit was transferred to a third party without the Hobarts first notifying Alexander and giving him the opportunity to exercise the right of first refusal. Alexander sued the Hobarts for breach of contract and fraud. Steve and Nick moved for judgment on the pleadings alleging the contract was void for impossibility of performance or, alternatively, that it was for an unlawful object. They also claimed the right of first refusal is an unreasonable restraint on the alienation of property. The circuit court granted the motion on the grounds of impossible performance. Alexander appeals, asserting that the circuit court erred in concluding the contract was void. We reverse the circuit court's order and judgment on the pleadings. Additionally, through notice of review, Nick seeks review of the circuit court's ruling that the right of first refusal is not an unreasonable restraint on alienation of property. We affirm the circuit court's ruling on that issue.

---

1.	For clarity, Steve and Nick Hobart are identified by their first names, unless the context requires otherwise such as in quoted documents. Upon Steve's passing during the pendency of the case, his estate was substituted as a defendant. For consistency, we use the name Steve when referring to him personally and to his estate.

-1-

**Factual and Procedural Background**

[¶2.]       In September 2003, Steve held a United States Forest Service (USFS)

grazing permit that allowed him to graze his cattle on certain forest service land

associated with the permit known as the Gillette Prairie Allotment.[2]  On September

12, 2003, Steve entered into a written agreement (Agreement) with Alexander

entitled "First Right of Refusal if and when he ever decides to sell."  The Agreement,

signed by Steve and Alexander, stated in substantial part:

> The parties agree: Hobart presently has a USFS permit
> identified as Gillette Prairie allotment in his sole name.  He has
> the authority to enter into this agreement on his own behalf.
> There are no others directly or indirectly involved in the
> ownership, control, or use of the cattle subject to this agreement.
> Steve Hobart's family having first right to have permit
> transferred to their names or name.  Hobart herewith grants
> Alexander the first right of refusal to purchase Hobart's cattle
> and grazing allotment in combination of the aforesaid USFS
> permit for a price to be determined as hereafter set forth.
> Alexander's [sic] will also have first right of refusal from Steve
> Hobart [sic] heirs.
>
> Term of this Agreement:
>
> It is agreed the term of this agreement shall commence with the
> signing of this agreement and shall terminate only when said
> permit is successfully transferred to Alexander or Alexander has
> not exercised his right to purchase said cattle as hereinafter
> provided.
>
> Exercise of Said First Right of Refusal:

---

2.    Federal regulations governing USFS grazing permits define allotment as "a
      designated area of land for livestock grazing."  36 C.F.R. § 222.1(b).  A
      grazing permit is defined, in part, as "any document authorizing livestock to
      use National Forest System or other lands under Forest Service control for
      the purpose of livestock production including . . . Term permits for up to 10
      years with priority for renewal at the end of the term."  *Id.*

> Hobart agrees to notify Alexander in writing at 11590 Gillette Prairie Road, Hill City, South Dakota 57745.
>
> Purchase Price:
>
> It is agreed the price of the livestock shall be determined between Alexander and Hobart by referring to the price of the similar livestock as of the date of the notice by Hobart to Alexander of the offer to purchase aforesaid. Such price shall be determined by a comparison of the price for that date established by sales at the Belle Fourche Livestock Barn and the Phillip Livestock Barn. In the event the parties do not agree to such price it is agreed the parties shall be bound by the laws of the State of South Dakota on binding arbitration through which the price shall be fully resolved.
>
> Payment of Purchase Price:
>
> It is agreed Alexander shall pay said livestock price in full on the date the USFS permit is transferred to Alexander. Alexander shall also pay Hobart the sum of $300.00 per head allocated by such permit. (Example: If the permit allows Alexander 50 head Alexander shall pay Hobart an additional sum of $15,000.)
>
> Possession:
>
> It is agreed the possession of the cattle shall transfer to Alexander on the date the permit is transferred to Alexander by the USFS. Risk of loss and expense of upkeep of said cattle and permit shall remain in Hobart until the transfer successfully is made to Alexander.
>
> . . . .
>
> Binding of Agreement: It is agreed this contract shall be binding on the parties hereto, their heirs, successors and assigns.

[¶3.]      According to the amended complaint, the parties entered into the Agreement because Steve "had an outstanding debt due to [Alexander] and was using the grazing allotment and cattle as collateral for the debt owed." On the same date the Agreement was signed, the parties signed a short-form agreement, drafted

by Alexander, which stated, in part, that "[i]n consideration of the mutual and reciprocal covenants flowing between the parties therein, Hobart has agreed to give Alexander a first right of refusal to have grazing allotment transferred to Alexander's [sic]." This document was signed by Steve and Alexander and was thereafter recorded with the Pennington County Register of Deeds.

[¶4.]      On February 9, 2005, the parties signed an addendum (Addendum) to the Agreement, which provided, in part:

> This addendum is to the Right of First Refusal/Purchase Agreement entered into between Steve Hobart and Rodney Alexander dated September 12, 2003.
>
> Under the terms of this addendum, the parties continue in their agreement that Alexander has the Right of First Refusal to purchase up to 45 head of cattle, and the associated grazing permit on the USFS Gillette Prairie Allotment price is as agreed to in the September, 2003 document. This addendum is to include and clarify that the Right of First Refusal extends to and includes the right to purchase the agreed upon cattle and associated Gillette Prairie Allotment from Steve Hobart's son, Nick Hobart. The agreement will include not only up to 45 head of cattle but also the US Forest Service allotment and permit to allow those cattle to graze on the Gillette Prairie Allotment, now held by Mr. Steve Hobart. This Addendum supplements the language found in paragraph 1 of the September, 2003 agreement establishing and granting this Right of First Refusal/option agreement as an obligation both in regard to Steve Hobart and also as to his heirs or assigns.

The Addendum was signed by Steve and Nick, as well as Alexander and Alexander's attorney. In the discussion that follows, these documents are referred to either individually or collectively as the "ROFR" (Right of First Refusal).

[¶5.]      According to Alexander, Steve never satisfied the debt owed to him. Alexander alleges that in December 2021, Nick sold the cattle permitted on the grazing allotment and "subsequently allowed the grazing allotment to be

-4-

transferred to a third party[,]" all without first giving notice to Alexander or disclosing the terms of the sale or the terms in which the allotment would be transferred. Alexander was never given the opportunity to exercise the ROFR.

[¶6.]      In April 2023, Alexander sued the Hobarts alleging breach of contract and fraud relating to their failure to allow him the opportunity to exercise the ROFR. The defendants filed separate answers and Nick filed a motion for judgment on the pleadings. Upon the stipulation of all counsel, Alexander filed a motion to amend his complaint and the circuit court granted the motion.

[¶7.]      The amended complaint asserted two breach of contract claims alleging that Steve, Nick, or both of them breached the contract by (1) selling the cattle, and (2) allowing the grazing allotment to be transferred to a third party, without giving Alexander the opportunity to exercise the ROFR. Alexander also brought a separate claim of fraud alleging that he entered into the Agreement in exchange for full satisfaction and waiver of defaults for a prior debt Steve owed to him and that, through the Agreement and Addendum, the defendants promised him the right of first refusal "despite never intending to perform that promise." Nick answered the amended complaint and, among other defenses, alleged the contract was unenforceable as a matter of law. Steve did not answer the amended complaint.[3]

[¶8.]      Thereafter, Nick filed an amended motion for judgment on the pleadings with a supporting brief alleging the ROFR was void as a matter of law as

---

3. Steve passed away on January 5, 2024, and the circuit court entered an order substituting Steve's estate as a defendant.

an unreasonable restraint on the alienation of property. Citing the factors in *Laska v. Barr (Laska II)*, 2018 S.D. 6, 907 N.W.2d 47, Nick asserted the ROFR established a quasi-fixed price that did not require Alexander to match any offer received by the Hobarts and would permit Alexander to undercut any offer that may exceed market price. He also claimed the ROFR lasted in perpetuity and its purpose did not justify its unlimited duration. In addition, Nick contended the ROFR was void as a matter of law because his performance was a legal impossibility or, in the alternative, the ROFR was for an unlawful object. He claimed the ROFR contemplated that he would be required to transfer the grazing permit to Alexander. This, according to Nick, was not possible or legal because the federal regulations do not authorize a permittee to transfer a permit; only the USFS can do so. He argued that because his contemplated performance was either impossible, or illegal in contravention of the federal regulations, the ROFR was void at its inception. Counsel for Steve joined Nick's amended motion and brief.

[¶9.] Alexander filed a responsive brief and contended the ROFR was not an unreasonable restraint on the alienation of property. He distinguished *Laska II* and noted the ROFR did not lock the Hobarts into a certain price for the cattle. Rather, he argued the agreement contemplated the parties would have ample opportunity to negotiate the purchase price of the cattle by referring to the "going market rate" and if they could not agree, they would proceed to binding arbitration to resolve the price. Alexander argued the ROFR was for a valid purpose in that it was to pay back a debt he was owed and the grazing allotment and cattle were used as collateral.

[¶10.]     In response to Nick's claim that the ROFR was void, Alexander argued the agreement had a lawful object. He also asserted that it was common practice, and consistent with federal regulations, for grazing permits to be transferred when cattle or land are sold, and that the parties acknowledged the cattle purchase would only occur if the permit was transferred to him. He argued the parties should be permitted to pursue discovery regarding the common practice as well as his eligibility for obtaining the permit.

[¶11.]     The court held a hearing where Nick and Alexander presented arguments on the motion; Steve joined the arguments presented by Nick. Nick's contentions focused on his position that it is impossible for a grazing permit holder to unilaterally transfer a permit, and only the USFS could do so. He also urged the court to rule the ROFR was an unreasonable restraint on alienation. Alexander reiterated his position that the object of the agreement, including the transfer of the permit, was not improper. He argued that under the agreement, if he "was not able to get the grazing allotment, the sale would not go through. It's a conditional purchase that would not be finalized until [he] does receive the allotment, making the [ROFR] not only possible but legal." With respect to the unreasonable restraint issue, Alexander argued that further development of factual evidence was warranted before the court considered the *Laska II* factors, particularly regarding the purpose and intent surrounding the ROFR. Nick countered that, for purposes of the motion, he accepted what was stated in the amended complaint—that the agreement was to serve as collateral for a debt previously owed to Alexander—as true and there was no need to consider additional evidence.

[¶12.] The court then issued its oral ruling. Addressing the unreasonable restraint issue, the court noted *Laska II* and stated:

> I recognize this case to be different factually. I don't believe the fixed price here or the - - what has been determined as a quasi-fixed price to be, well, significantly different than the - - what it is in the *Laska* case. And again, that's only one thing to consider against enforceability. However, I don't believe that the facts of this case would lean against that. I do believe it to be appropriate.
>
> The unlimited duration again here is - - does lean against it, but it is not a sole factor to consider. I don't believe there to be an unreasonable restraint in that regard, so I do believe it's - - the contract's valid in that purpose.

[¶13.] The court then turned to Nick's second argument, and stated:

> I do believe that the Defendant has made a powerful argument regarding the transferability of that grazing right as something that's a legal impossibility.
>
> I believe Plaintiff would like the [c]ourt to just kind of look at that as a condition of the contract almost that has to occur before the rest of it's valid, but the way the contract is written as I'm looking at [the contract], I do believe that that's a significant portion of it, the transferring of that right, and that being not a legal possibility based upon the statute and case law essentially cited by the Defense makes that contract for the right of first refusal void. As such, I'm going to grant the Motion for Judgment on the Pleadings based upon that.

[¶14.] Thereafter, the court entered a written order and judgment granting the amended motion for judgment on the pleadings "because the Right of First Refusal upon which Plaintiff's Amended Complaint relies is void as a matter of law." The court's order and judgment incorporated the reasons stated by the court at the motion hearing, as well as the reasons stated by Nick in his briefing regarding enforceability of the ROFR. The court entered judgment in favor of the Hobarts, and against Alexander, and dismissed the amended complaint, declaring

that the order and judgment "fully and finally resolve[d] all claims against all parties in this matter."

[¶15.]     Alexander appeals, asserting the circuit court erred when it dismissed the amended complaint as a matter of law. In a notice of review, Nick alleges the circuit court erred when it determined the ROFR is not an unreasonable restraint on the alienation of property.[4]

## Standard of Review

[¶16.]     This Court reviews a trial court's grant of a motion for judgment on the pleadings under a de novo standard. *Slota v. Imhoff & Assocs., P.C.*, 2020 S.D. 55, ¶ 12, 949 N.W.2d 869, 873. Similarly, "[c]ontract interpretation is a question of law reviewed de novo." *Uhre Realty Corp. v. Tronnes*, 2024 S.D. 10, ¶ 20, 3 N.W.3d 427, 434 (alteration in original) (quoting *Coffey v. Coffey*, 2016 S.D. 96, ¶ 7, 888 N.W.2d 805, 808). "Because we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination." *Detmers v. Costner*, 2023 S.D. 40, ¶ 22, 994 N.W.2d 445, 455 (quoting *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354).

## Analysis and Decision

### *Whether the circuit court erred when it dismissed the amended complaint as a matter of law.*

[¶17.]     Pursuant to SDCL 15-6-12(c), the circuit court entered judgment on the pleadings, which we have explained is "an expeditious remedy to test the legal

---

4.    Nick and Steve filed separate appellate briefs. Steve's arguments involving impossibility of performance are essentially identical to Nick's. Steve did not join Nick's notice of review issue involving the alleged unreasonable restraint on the alienation of property.

sufficiency, substance, and form of the pleadings." *Slota*, 2020 S.D. 55, ¶ 12, 949 N.W.2d at 873 (quoting *Loesch v. City of Huron*, 2006 S.D. 93, ¶ 3, 723 N.W.2d 694, 695). "It is only an appropriate remedy to resolve issues of law when there are no disputed facts." *Id.* (citation omitted). For purposes of such a motion, the court "must accept as true the facts in the complaint and draw all reasonable inferences in the favor of the nonmoving party." *Sturzenbecher v. Sioux Cnty. Ranch, LLC*, 2025 S.D. 24, ¶ 45, 20 N.W.3d 419, 432 (citation omitted); *see N. Am. Truck & Trailer, Inc. v. M.C.I. Comm. Servs., Inc.*, 2008 S.D. 45, ¶ 6, 751 N.W.2d 710, 712 (relating a similar standard for a motion to dismiss under SDCL 15-6-12(b)).

[¶18.] "Where a contract has but a single object and such object is unlawful in whole or in part, or wholly impossible of performance, . . . the entire contract is void." SDCL 53-5-3. "A void contract is invalid or unlawful from its inception. It is a mere nullity, and incapable of confirmation or ratification." *Knecht v. Evridge*, 2020 S.D. 9, ¶ 47, 940 N.W.2d 318, 331 (quoting *Nature's 10 Jewelers v. Gunderson*, 2002 S.D. 80, ¶ 12, 648 N.W.2d 804, 807).

[¶19.] In this case, the circuit court determined the ROFR was void for impossibility of performance based on the Hobarts' argument that it was legally impossible for them to transfer the grazing permit given the federal regulations governing USFS grazing permits. Under these federal regulations, an owner of livestock may graze livestock on National Forest Service lands and other lands under Forest Service control if authorized by a grazing permit issued by the USFS. *See* 36 C.F.R. §§ 222.1(b), 222.3(a). The permit identifies a designated area of land, referred to as a grazing allotment, upon which the permit holder is allowed to graze

a certain number of permitted livestock that are associated with that allotment. 36 C.F.R. §§ 222.1(b), 222.3(c)(1). A permit holder has first priority to receive a new permit at the end of the permit term. 36 C.F.R. § 222.3(c)(1)(ii). If the permit holder sells the livestock, a "[n]ew term permit[] may be issued to the purchaser of [the] permitted livestock . . . , provided the permittee waives his term permit to the United States and provided the purchaser is otherwise eligible and qualified." 36 C.F.R. § 222.3(c)(1)(iv).

[¶20.]        On appeal, as they did below, the Hobarts cite these regulations and *Hage v. United States*, 35 Fed. Cl. 147 (Fed. Cl. 1996), in support of their argument that their performance was impossible. But *Hage*, a takings case involving the government's cancellation of a grazing permit, does not help resolve the issue presented here. In *Hage*, the court evaluated the nature of a grazing permit when considering whether the permit in that case created a binding contract, as alleged by the plaintiff. The court likened the permit to a license rather than a contract, observing that "similar to a license, [the permit holder] cannot legally assign or transfer the permit, the permit creates a personal privilege[.]" *Id.* at 167.

[¶21.]        We note that the Hobarts do not dispute *whether* a permit can be "transferred" to a purchaser of cattle associated with a grazing allotment.[5] Rather,

---

5.    Technically, an existing permit is not transferred in the literal sense. Rather, the permittee waives his permit back to the United States in favor of the purchaser and a new permit *may* be issued to the purchaser if the USFS approves it. 36 C.F.R. § 222.3(c)(1)(iv). However, the word transfer appears to be an accepted way that the overall process is described. *See, e.g.*, *Fence Creek Cattle Co. v. U.S. Forest Service*, 602 F.3d 1125, 1128 n.1 (9th Cir. 2010) (describing the process); *Knecht v. Evridge*, 2020 S.D. 9, ¶ 49, 940 N.W.2d 318, 332 (referring to "the transfer of" a grazing permit).

-11-

the crux of their argument is that *only the USFS*, and not the existing permit holder, can do so. Accordingly, they contend the ROFR, which they claim contractually obligated them to directly transfer the permit to Alexander, was void at its inception. Alexander, on the other hand, argues that nothing in the ROFR called for the Hobarts to *personally* or directly transfer the permit to him and therefore it was not impossible to perform.

[¶22.]    The resolution of this issue depends on the language of the contract documents regarding transferability of the permit. Although the contract was inartfully drafted in some respects, there is no provision in the contract that requires *the Hobarts* to transfer the USFS grazing permit. The Agreement starts by acknowledging Steve's USFS grazing permit and then states that he grants Alexander the "first right of refusal to purchase Hobart's cattle and grazing allotment in combination of the aforesaid USFS permit[.]" The provisions that follow make it clear that such purchase is contingent on the grazing permit being transferred by the USFS.

[¶23.]    For example, the Agreement states it will terminate "only when said permit is *successfully transferred* to Alexander or Alexander has not exercised his right to purchase said cattle[.]" (Emphasis added.) Further, under the Agreement, Alexander has no obligation to pay the agreed upon purchase price for the cattle until "the date the *USFS permit is transferred* to [him]." (Emphasis added.) Notably, throughout the contract documents, these references to the transfer of the permit are all in the passive voice, and nowhere in the contract does it say that the *Hobarts* were obligated to do so, or that they were somehow assuring it would

occur.[6]  Indeed, the paragraph explaining the Hobarts' obligation to transfer possession of the cattle expressly states that such transfer shall occur "on the date the USFS permit is transferred to Alexander *by the USFS*."  (Emphasis added.)

[¶24.]     Under the express terms of this contingent contract, if Alexander exercised his right of first refusal but the USFS did not ultimately transfer the permit to him, Alexander would have no obligation to tender payment for the cattle or the grazing permit, nor would the Hobarts have any obligation to transfer possession of the cattle.  The fact that a contract contains a contingency requiring an action by a third party that may or may not occur does not make it void as a matter of law.  *See Detmers*, 2023 S.D. 40, ¶ 24, 994 N.W.2d at 455 (noting that "[a] condition precedent is a contract term distinguishable from a normal contractual promise in that it does not create a right or duty, but instead is a limitation on the contractual obligations of the parties" (quoting *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 38, 714 N.W.2d 884, 895)).

[¶25.]     The Hobarts' entire premise for claiming the ROFR is void because of an impossibility of performance hinged on their allegation that it would be legally impossible for *them* to transfer the permit to Alexander.  Because the ROFR does not require them to do so, their premise fails.[7]  We thus conclude that the circuit

---

6.    Another example of such reference is found in the short-form agreement filed with the register of deeds, which announces that Steve "agreed to give Alexander a first right of refusal *to have grazing allotment transferred* to Alexander."  (Emphasis added.)

7.    The Hobarts' alternative claim that the ROFR is void on the basis it was illegal or for an unlawful object, i.e., that Hobarts were required to transfer

(continued . . .)

court erred when it declared the ROFR void for impossibility as a matter of law and dismissed Alexander's complaint on this basis. Given our resolution of this issue, we need not address Alexander's alternative argument that the provisions of the contract relating to the purchase of the cattle are severable.[8]

### Whether the circuit court erred when it determined the ROFR is not an unreasonable restraint on the alienation of property.

[¶26.] In his notice of review, Nick challenges the circuit court's ruling that the ROFR is not void as an unreasonable restraint on the alienation of property. Under SDCL 43-3-5, "[c]onditions restraining alienation [of property], when

---

(. . . continued)
the permit and this is contrary to law, is essentially the same as their "impossibility" argument and is also without merit.

8. Alexander presents an additional alternative argument on appeal that, if this Court concludes the ROFR was void from its inception, the circuit court erred in dismissing his fraud claim because questions of fact exist on this claim. The circuit court's order did not separately address Alexander's fraud claim. The court dismissed Alexander's complaint *in its entirety* "because the [ROFR] upon which [Alexander's] Amended Complaint relies is void as a matter of law." Because we have concluded that the circuit court erred in determining that the ROFR was void, we need not address Alexander's alternative argument relating to the fraud claim.

We likewise decline to address Nick's responsive argument, first raised on appeal, that Alexander's fraud claim was properly dismissed because it was not pled as a "tort separate from the breach of contract claims." Nick, as the movant seeking dismissal, did not assert this argument below. Instead, in his circuit court briefs, he specifically noted all of Alexander's claims, including the fraud claim, and argued only that Alexander's amended complaint "relies entirely on the enforceability of the ROFR." Nick's newly raised argument regarding the fraud claim is not properly before us on appeal. *See Hauck v. Clay Cnty. Comm'n*, 2023 S.D. 43, ¶ 4 n.4, 994 N.W.2d 707, 709 n.4 (declining to address an argument raised for the first time on appeal).

-14-

repugnant to the interest created, are void." To be valid, restraints on alienation "must be reasonable and for a legitimate purpose." *Laska II*, 2018 S.D. 6, ¶ 24, 907 N.W.2d at 54. "A right of first refusal is a preemptive right restraining alienation." *Id.* "It 'is a valuable prerogative, limiting the owner's right to freely dispose of his property by compelling him to offer it first to the party who has the first right to buy.'" *Id.* (quoting *Wilson v. Whinery*, 678 P.2d 354, 356 (Wash. Ct. App. 1984)).

[¶27.]     In *Laska II*, this Court recognized some of the factors that courts may consider when determining the reasonableness of a preemptive restraint on alienation, "including: the purpose, whether the price is fixed, the parties' intent, and the duration of the restraint." 2018 S.D. 6, ¶ 25, 907 N.W.2d at 54 (citations omitted). We further noted that courts may "evaluate the nature, extent, and duration of the restraint, as well as the nature of the property interest." *Id.* (cleaned up) (citations omitted). Courts may also consider whether "the restraint was freely entered into by mutual consent as a normal incident of an equal bargaining relationship[.]" *Urquhart v. Teller*, 958 P.2d 714, 718 (Mont. 1998) (quoting *Edgar v. Hunt*, 706 P.2d 120, 122 (Mont. 1985)). Ultimately, "[t]he standard against which the impact of a restraint is to be measured is that of the property owner free to transfer property at his or her convenience at a price determined by the market." *Laska II*, 2018 S.D. 6, ¶ 25, 907 N.W.2d at 54 (quoting Restatement (Third) of Property: Servitudes § 3.4 cmt. c).

[¶28.]     On appeal, Nick argues the ROFR is invalid as an unreasonable restraint on alienation because it establishes a quasi-fixed price for the livestock and because it has an unlimited duration, as it lasts in perpetuity and is binding on

the parties and their heirs, successors, and assigns. He also argues the ROFR is "not conditioned on the Hobarts' willingness to sell their property[,]" suggesting that the ROFR would not require them "to have an actual desire to sell their property when they receive an offer."

[¶29.] In *Laska II*, this Court recognized that a restraint that includes a fixed price "does not render the restraint unreasonable per se[,]" nor does unlimited duration. 2018 S.D. 6, ¶ 27, 907 N.W.2d at 55. "But '[t]he greater the practical interference with the owner's ability to transfer, the stronger the purpose that is required to justify a direct restraint on alienation.'" *Id.* (alteration in original) (quoting Restatement (Third) of Property: Servitudes § 3.4 cmt. c). Here, the duration and price factors do not necessarily weigh against enforceability of the ROFR, particularly given the purpose of the restraint and the parties' intent as alleged in Alexander's amended complaint.

[¶30.] As to the duration factor, the language of the ROFR makes the preemptive right and corresponding obligations descendible. But those terms, like all the terms, were expressly included by the parties and the duration of the ROFR is just one factor that may be weighed. The fact that the obligations are binding on heirs, successors, and assigns must be viewed in light of the purpose underlying the contract, i.e., to satisfy a debt Steve owed to Alexander, which Nick ignores entirely when discussing this factor in his brief.

[¶31.] With regard to the price factor, Nick acknowledges that the ROFR "allows for the sale of the cattle at market price." He argues, however, that it does not require Alexander to match any third-party offer received by the Hobarts,

which, he contends, would allow Alexander to undercut any above-market price offers Hobarts might receive. Nick also notes that the ROFR establishes a fixed price of $300 per head for cattle allocated by any permit Alexander acquires pursuant to the Agreement.

[¶32.] Unlike the fixed purchase price in *Laska II*, here, the ROFR directs the parties to determine the purchase price by comparing the offer received to the price of similar cattle sold at two named livestock sale barns on the date the Hobarts provide notice to Alexander of the offer. But Nick incorrectly suggests that this is the end of it. The ROFR further provides that, *in the event the parties do not agree* on what that livestock price is, the parties agree to enter binding arbitration in which an arbitrator would establish the price of the cattle. Thus, the ROFR itself refutes the idea that the Hobarts are locked into a fixed livestock sale price over which they have no control or input, or that Alexander could unilaterally undercut the price the Hobarts could receive from a third party. This weighs in favor of a reasonableness determination.

[¶33.] Furthermore, even though the additional payment associated with the number of cattle allocated by the grazing permit is a set amount of $300 per head, this does not automatically render the entire price contemplated in the ROFR unreasonable. There is nothing in the record to show how the parties arrived at this amount, or what it was based on, when they negotiated the agreement and settled on that term. It is also uncertain from the existing record whether this price term had any relationship to the amount of the outstanding debt that Steve owed

Alexander.  Therefore, *on the existing pleadings*, there is no basis to conclude that this amount is inherently unreasonable.

[¶34.]　　　　In *Laska II*, we noted, when affirming the determination that the right of first refusal was an unreasonable restraint on alienation, that there was no "strong purpose justifying the restraint." 2018 S.D. 6, ¶ 28, 907 N.W.2d at 55. However, here, the purpose and intent of the parties in entering into the contract, as identified on the face of Alexander's pleadings, support a conclusion that the ROFR is not unreasonable.  The parties negotiated the agreement and bargained for all the terms of the preemptive restraint, including the duration and price terms, because Steve had an outstanding unpaid debt that he owed Alexander and the grazing allotment and cattle were used as collateral for that debt.  There is nothing in this record that demonstrates the terms of the ROFR were determined by anything other than "mutual consent as a normal incident of an equal bargaining relationship[.]" *Urquhart*, 958 P.2d at 718.

[¶35.]　　　　Finally, it is worth noting that, contrary to Nick's claim, the Hobarts retained total control over whether the ROFR would ever be triggered, as the opening language of the ROFR expressly states that this would happen only "*if and when [they] ever decide[] to sell.*" (Emphasis added.)  We conclude, based on the facts pled and arguments presented, that the circuit court did not err when it determined the ROFR is not an unreasonable restraint on the alienation of property.

[¶36.]　　　　We reverse the circuit court's order and judgment and remand for further proceedings.

[¶37.]     JENSEN, Chief Justice, and KERN, SALTER and MYREN, Justices, concur.